IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 6967 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CHICAGO TRANSIT AUTHORITY, STV | ) | |
| INCORPORATED, COLONY INSURANCE | ) | |
| COMPANY and GONZALO GONZALEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Nautilus Insurance Company ("Nautilus"), filed a four-count complaint against defendants GSG Consultants, Inc. ("GSG"),[1] Chicago Transit Authority ("CTA"), STV Incorporated ("STV"), Colony Insurance Company ("Colony"), and Gonzalo Gonzalez ("Gonzalez"),[2] seeking a declaratory judgment that it has no duty to defend or indemnify CTA and STV against Gonzalez's lawsuit filed in the Circuit Court of Cook County, Illinois, entitled Gonzalez v. Riley Construction Company, Inc., et al., NO. 11-L-3204 ("Gonzalez Action").[3] Count I seeks a declaration that Nautilus has no duty to defend or indemnify CTA or STV in the Gonzalez Action because they do not qualify as additional insureds under the Nautilus policy. Count II seeks a declaration that CTA does not qualify as an additional insured because there is no written contract or agreement between GSG and CTA agreeing to name CTA as an additional

---

[1]Nautilus and GSG filed a joint stipulation dismissing GSG from this matter.

[2]Gonzalez was added as a necessary and indispensable party pursuant to Fed. R. Civ. P. 19.

[3]It appears that a final order was entered in the Gonzalez Action on March 30, 2016, but none of the parties have updated this court on the matter's current disposition.

insured. Count III seeks a declaration that Nautilus has no duty to defend or indemnify CTA or STV because of the Nautilus policy's "professional services" exclusion. Count III also seeks a declaration that Nautilus owes STV no duty to defend or indemnify because no suit has been filed against STV. Count IV seeks a declaration that CTA and STV are not entitled to coverage under an excess policy.

Nautilus filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). CTA and STV are the only parties contesting the motion. For the reasons discussed below, the court grants Nautilus's motion for judgment on the pleadings.

## BACKGROUND

On December 30, 2007, CTA hired STV (under the "Prime Agreement") to manage the construction at CTA's Oakton Street train station (the "worksite"). The Prime Agreement requires STV to indemnify CTA for damages caused by STV or its subcontractors' negligent acts or omissions. On February 4, 2008, STV and GSG entered into a master subcontract for professional services (the "GSG Agreement"), which required GSG to "indemnify, defend, and hold harmless STV [and CTA] . . . from and against all claims, damages, losses, and expenses . . . arising out of, relating to or resulting from the performance of this Agreement." Nautilus insured GSG pursuant to annual commercial general liability insurance policies and excess policies since 2010. GSG's Nautilus policy contains an "Additional Insured – Blanket" endorsement, which provides that:

> Section III – Who Is An Insured is amended to include as an insured, with respect to Coverage A, B, and D, any person(s) or organization(s) when you and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such written contract or written agreement must be in effect prior

to the performance of your work which is the subject of such written contract or written agreement.

On March 8, 2011, Gonzalez, another sub-contractor's employee, was seriously injured in a construction accident at the worksite. CTA and STV assert in the instant case that GSG was supervising the worksite pursuant to the GSG Agreement when the accident occurred. On March 25, 2011, Gonzalez filed the Gonzalez Action against five parties, including CTA, but not GSG or STV.

CTA and STV, through Colony, tendered their defense to Nautilus on June 9, 2014. Colony is STV's commercial general liability insurer, and has "been defending CTA and STV in [the Gonzalez Action]." Nautilus eventually denied coverage for CTA and STV on September 8, 2014. Nautilus subsequently filed the instant declaratory judgment complaint against GSG, CTA, STV, Colony, and Gonzalez. Jurisdiction is properly based on diversity of citizenship.

## **DISCUSSION**[4]

**I.    Legal Standard**

A party may move for judgment on the pleadings after the pleadings are closed and early enough not to delay trial. Fed. R. Civ. P. 12(c). The pleadings are comprised of "the complaint, the answer, and any written instruments attached as exhibits." Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority, 378 F.3d 596, 600 (7th Cir. 2004). A Rule 12(c) motion is generally "governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Lodholtz v. York Risk Servs. Group, Inc., 778 F.3d 635, 639 (7th Cir. 2015).

---

[4]The parties agree that Illinois law governs interpretation of this policy.

When a party uses a Rule 12(c) motion to attempt to win its case "on the basis of the underlying substantive merits," however, the correct standard "is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993). Under this standard, a Rule 12(c) motion will not be granted unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court "construe[s] all facts and reasonable inferences in the light most favorable to the non-moving party." Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co., 796 F.3d 717, 723 (7th Cir. 2015) (internal citation omitted). A motion for judgment on the pleadings may not, however, "be used to resolve swearing contests between litigants." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). The court's sole role is to "determine whether there is a genuine issue for trial." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson, 477 U.S. at 249).

## II. Duty to Defend

Generally, Illinois law imposes a duty to defend if a comparison of the underlying complaint and the insurance policy demonstrates that the claim falls or could potentially fall within the coverage. Pekin Ins. Co. v. Wilson, 237 Ill. 2d 446, 455 (2010). The Illinois Supreme Court has held that a court should consider all relevant facts contained in the pleadings, including third-party complaints and counterclaims, to decide an insured's status. Id. at 460-62. When determining the duty to defend, an insurance policy should be liberally construed in favor of coverage. Selective Ins. Co. of South Carolina v. Target Corp., 13-CV-5910, 2015 WL

4

5444658, at *3 (N.D. Ill. Sept. 15, 2015). "If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning." Outboard Marine Corp. v. Liberty Mutual Ins. Corp., 154 Ill. 2d 90, 108 (1992) (internal citations omitted). If there is any doubt, it should be resolved in favor of the insured because "the threshold for pleading a duty to defend is low." Am. Econ. Ins. Co. v. Holabird and Root, 382 Ill. App. 3d 1017, 1023 (2008).

### A.    CTA

Nautilus claims to have no duty to defend CTA for two reasons. First, it argues that CTA does not qualify as an additional insured under GSG's Nautilus policy because there is no allegation in the Gonzalez Action that Gonzalez's injury resulted from GSG's work for CTA. Second, it argues that even if CTA could qualify under the additional insured provision, there is no contract between Nautilus's insured (GSG) and CTA agreeing that GSG will add CTA to its insurance policy, as GSG's Nautilus policy requires.

In response to the first argument, CTA argues that based on deposition testimony of a former GSG employee in the Gonzalez Action that he was the "eyes and ears" on the project at issue, CTA qualifies as an additional insured. The parties have expended a great amount of energy arguing whether the deposition may be considered at this stage of this matter. The law on this matter is unsettled at best. See Pekin, 237 Ill. 2d at 459; see also Holabird and Root, 382 Ill. App. 3d at 1023, 1031-1032. The court need not reach this issue, however, because even assuming that CTA could qualify as an additional insured, Nautilus still does not owe it a duty to defend because there is no written contract between CTA and Nautilus's insured (GSG).

Nautilus argues that CTA does not qualify as an additional insured because "GSG and CTA do not have a direct written contract or written agreement that CTA is added as an

additional insured under the Nautilus Policies." In support, Nautilus cites Westfield Ins. Co. v. FCL Builders, Inc., 407 Ill. App. 3d 730 (2011), where the parties' relationship mirrors CTA, STV, GSG, and Nautilus's relationship. There, a general contractor ("FCL") hired a sub-contractor ("Suburban"), which in turn hired another sub-contractor ("JAK"). FCL and JAK never had a written agreement. The agreement between Suburban and JAK required JAK to add FCL and Suburban to JAK's insurance policy with Westfield Insurance Company ("Westfield"). The court held that JAK's Westfield policy was the controlling contract. Id. at 733-34. To qualify as an additional insured under the policy, applicants had to enter into a direct written contract or agreement with the primary policy-holder, JAK. Id. at 734. Therefore, the court held that Westfield owed FCL no duty to defend because there was no written contract or agreement between FCL and JAK. Id.

In its response, CTA ignores Westfield, and instead argues that GSG's contractual obligation with STV to name CTA as an additional insured meets the policy's "writing requirement." CTA does not cite any supporting case law, and its argument was squarely rejected in Westfield.

The Westfield court persuasively parsed the policy's additional insured endorsement. In Westfield, additional insured status was granted if "any person or organization for whom you are performing operations when you and such a person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured." Id. The court held that the use of the phrase "such person or organization" instead of "any person or organization" required any entity wishing to qualify as an additional insured to enter into a direct written agreement with JAK, the primary policyholder. Id. This language closely resembles the

Nautilus policy's language. Consequently, the Illinois Appellate Court's interpretation is persuasive.

The Westfield court also rejected other arguments similar to those CTA presents. First, FCL argued that the Suburban-JAK contract incorporated terms of its prime agreement and created a contractual obligation on JAK's behalf. Second, FCL argued that the "prime agreement" and "prime sub-contracts" made clear the parties' intention to add the other contractors to JAK's policy as additional insureds. The Illinois Appellate Court rejected both of these arguments because the plain meaning of the insurance policy's terms required FCL to contract directly in writing with JAK, the primary policyholder, to gain additional insured status. Id. at 735-36. Given that GSG's Nautilus policy language is virtually identical to the Westfield policy's language, the court finds Westfield's reasoning persuasive. Consequently, CTA does not qualify as an additional insured.

**B.     STV**

Nautilus claims to have no duty to defend STV for two reasons. First, as with CTA, STV does not qualify as an additional insured under GSG's Nautilus policy because there is no allegation in the Gonzalez Action that Gonzalez's injury resulted from GSG's work for STV. Second, even if STV could qualify under the additional insured provision, STV is not being sued in the Gonzalez Action. STV argues that it qualifies as an additional insured based on the same deposition testimony that CTA relies on to establish its additional insured qualifications.

The court again need not reach this issue because, even assuming that STV could qualify as an additional insured, Nautilus still does not owe STV a duty to defend because STV is not being sued in the Gonzalez Action. A court must give the words of an insurance policy's

7

provision their "plain, ordinary, and popular meaning" if the provision is unambiguous. Outboard Marine Corp., 154 Ill. 2d at 108. According to its policy, Nautilus must "defend the insured against any suit seeking those damages." The policy clearly defines a "suit" as "a civil proceeding in which damages because of bodily injury, property damage, personal and advertising injury, or professional services to which the insurance applies are alleged." Although STV argues that it may be liable as a CTA agent, STV has not presented any information to the court that any civil proceeding has been filed against it relating to the Gonzalez Action. In short, there is no action against STV to defend. Consequently, Nautilus owes STV no duty to defend given the plain meaning of the Nautilus policy.

      **C.     Excess Policy**

Nautilus claims that it is entitled to judgment on the pleadings as to Count IV because the "[e]xcess [p]olicy's unambiguous [i]nsuring [a]greement" states that the excess policy follows the same terms and conditions as the underlying policy. Since there is no duty to defend CTA or STV for the reasons discussed above, the excess policy does not apply to CTA or STV. Consequently, Nautilus's motion is granted as to Count IV.

**III.    Duty to Indemnify**

Finally, because the duty to defend is broader than the duty to indemnify, "where no duty to defend exists and the facts alleged do not even fall <u>potentially</u> within the insurance coverage, such facts alleged could obviously never <u>actually</u> fall within the scope of coverage." <u>Crum & Forster Managers Corp. v. Resolution Trust Corp.</u>, 156 Ill. 2d 384, 398 (1993) (emphasis included). Consequently, as Nautilus has demonstrated that it has no duty to defend, it also has no duty to indemnify.

## **CONCLUSION**

For the foregoing reasons, Nautilus's motion for judgment on the pleadings is granted. Judgment is hereby entered declaring that Nautilus has no duty to defend or indemnify CTA or STV in the Gonzalez Action.


**ENTER:** **June 30, 2016**

_____
**Robert W. Gettleman
United States District Judge**